UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ALI MOHAMMADI,

                Petitioner,

vs.

KRISTI NOEM, *et al.*,

                Respondents.

Case No.: 2:26-cv-00032-GMN-EJY

**ORDER GRANTING, IN PART, PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Ali Mohammadi's Petition for Writ of Habeas Corpus, (ECF No. 1). Federal Respondents Kristi Noem, Todd Lyons, Thomas E. Freeley, Pamela Bondi, The Executive Office for Immigration Review, and the United States Immigration and Customs Enforcement filed a Response, (ECF No. 15), to which Petitioner filed a Reply, (ECF No. 16).

Petitioner, who has not received a bond hearing, argues that he is being detained under 8 U.S.C.A. § 1226(a). The Government argues that because Petitioner has not been admitted to the United States, he remains detained under 8 U.S.C.A. § 1225(b)(2). While the Court agrees that Petitioner is detained under § 1225(b)(2), it nonetheless finds that his detention without a bond hearing violates his due process rights. The Court thus GRANTS the Petition, in part, and orders that Petitioner receive a bond hearing. The Court DENIES the Petition to the extent that it seeks Petitioner's immediate release.

**I.  BACKGROUND**

Petitioner Ali Mohammadi is a citizen of Afghanistan who entered the United States on December 15, 2024, under a grant of humanitarian parole under 8 U.S.C.A. § 1182(d)(5). (Pet. 1:3–5, ECF No. 1). Removal proceedings were commenced pursuant to a Notice to Appear ("NTA") on the same day. (*Id.* 2:13–14). The NTA set a hearing before an Immigration Judge

1  ("IJ") for May 17, 2028. (NTA, Ex. 1 to Pet., ECF No. 1-1).  Petitioner has no criminal history
2  and has complied with all conditions imposed by the Department of Homeland Security
3  ("DHS"). (*Id.* 1:6).  On December 29, 2025, Petitioner appeared for a scheduled ICE
4  appointment, where he was informed that he would be taken into custody because he had not
5  been "properly vetted." (*Id.* 1:7–9).  No individualized findings were made, and DHS cited no
6  conduct, criminal history, or concerns that Petitioner was a flight risk or a danger to the
7  community. (*Id.* 1:9–11).  To date, Petitioner remains detained at the Henderson Detention
8  Center in Henderson, Nevada, and has not been given a bond hearing before an IJ. (Resp. 2:16–
9  17, ECF No. 15); (Pet. 8:26–27).  With this Petition, Petitioner challenges his continued
10 detention and requests an immediate bond hearing and release. (Pet. 12:10–11); (Reply 8:26–
11 27, ECF No. 16).

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C.A. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Petitioner argues that he is entitled to injunctive relief because § 1226(a), not § 1225(b)(2), applies to him, and therefore his continued detention without a bond hearing violates both the Due Process clause of the Fifth Amendment and the Immigration and

Nationality Act ("INA"). (Pet. 8:18–10:27). Petitioner asserts that he was detained solely on the basis of his nationality, religion, and race, and that the discriminatory character of his detention creates an additional ground for violation of the Due Process clause of the Fifth Amendment. (Pet. 11:3–27). Respondents assert that petitioner is lawfully detained pursuant to § 1225(b)(2) and that he is not entitled to a bond hearing pursuant to the Board of Immigration Appeals'("BIA") interpretation of that statute in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 218 (BIA 2025).

### A. Legal Basis for Detention

Petitioner asserts that Respondents' subjection of him to § 1225(b)(2), requiring mandatory detention, violates the INA and the Due Process Clause of the Fifth Amendment. The key question is whether Petitioner's detention is governed by § 1225(b)(2), which mandates detention, or § 1226(a), which allows for release on bond. Respondents advance an interpretation of § 1225(b)(2) that they argue encompasses Petitioner. They assert that § 1225(b)(2)'s "seeking admission" element is satisfied by the mere fact that Petitioner is present in the United States without admission. (Resp. 5:13–14). Respondents also contend that Petitioner's grant of humanitarian parole under § 1182(d)(5) did not constitute lawful admission to the United States; rather, while the grant of parole permitted Petitioner to be physically present in the country, as a matter of law, he remained at the border for purposes of admission and detention. (*Id.* 8:10–9:2).

The Supreme Court recently analyzed the relationship between § 1225 and § 1226 in *Jennings v. Rodriguez*, where the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287. It further explained that § 1225 "applies primarily to aliens seeking entry into the Unites States." *Id.* at 297. By contrast, § 1226 "applies to aliens already

present in the United States." *Id.* at 303. "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.*

Here, upon entering the United States in December of 2024, Petitioner was detained under § 1225(b)(2) as an arriving noncitizen not entitled to admission into the country. (Resp. 8:22-26); 8 U.S.C.A. § 1225(b)(2)(A). Petitioner contends that once DHS granted him humanitarian parole under § 1182(d)(5), inspection-based custody concluded, and any subsequent detention of Petitioner would be governed by § 1226(a). (Pet. 3:9–16). However, as the Supreme Court explained in *Jennings*, once humanitarian parole under § 1182(d)(5) is terminated, the noncitizen is "returned to the custody from which he was paroled,"—here, custody under § 1225(b)(2). 583 U.S. at 288 (quoting 8 U.S.C.A. § 1182(d)(5)(A)). Accordingly, the Court finds that Petitioner here is detained under § 1225(b)(2), not § 1226(a).

**B. Violation of the Due Process Clause of the Fifth Amendment**

This does not end the inquiry, however—as several Courts in this District have explained, detention under § 1225(b)(2) without a bond hearing may still violate the Due Process clause of the Fifth Amendment when applied to noncitizens who have been living in the United States and for whom the government has made no individualized showing of flight risk or danger to the community. *See Escobar Salgado v. Mattos*, No. 2:25-cv-01872-RFB-EJY, 2025 WL 3205356, at *22–24 (D. Nev. Nov. 17, 2025); *Sanchez-Camacho v. Noem*, No. 2:25-cv-02343-RFB-DJA, 2025 WL 3564734, at *4–6 (D. Nev. Dec. 12, 2025); *see also Martinez v. Chestnut*, No. 1:25-cv-1826 TLN CKD P, 2026 WL 121221, at *2–4 (E.D. Cal. Jan 16, 2026), *report and recommendation adopted*, 2026 WL 243672 (E.D. Cal. Jan. 28, 2026).

To determine whether detention violates due process, courts apply the three-part test set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203–07 (9th Cir. 2022) ("Ultimately, *Matthews* remains a flexible test that can and must

account for the heightened government interest in the immigration detention context."). Under *Matthews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews*, 424 U.S. at 335.

### 1. Analysis of the *Matthews* Factors

The first *Matthews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Matthews*, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Further, the Supreme Court has recognized that a protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). In *Morrissey v. Brewer*, the Supreme Court explained that when placed on parole, "[t]he parolee has relied on at least an implicit promise that parole will only be revoked if he fails to live up to the parole conditions." 408 U.S. 471, 482 (1972). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

A noncitizen can be paroled under § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C.A. § 1182(d)(5)(A)). Release therefore "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to

detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). Further, Petitioner's liberty interest here is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. *Cf. Rodriguez Diaz*, 53 F.4th at 1208 (holding that habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bond hearing before an IJ upon a showing of materially changed circumstances).

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." *Matthews*, 424 U.S. at 335.  Here, there are no existing procedures for Petitioner to challenge his detention pending the conclusion of his removal proceeding without the opportunity for release on bond.  The risk of erroneous deprivation is extremely high where DHS agency officials have sole, unreviewable discretion to detain Petitioner without an individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion.  Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690.  Given DHS's initial decision to grant Petitioner humanitarian parole and his lack of any criminal history or parole infractions, it is possible that he is being arbitrarily and unjustifiably deprived of his liberty.

Moreover, the additional procedures afforded under § 1226(a), including an individualized custody determination by an IJ, substantially mitigate the risk of erroneous deprivation of Petitioner's liberty because those procedures would require the government to establish that Petitioner presents a flight risk or a danger to the community.  An adverse decision by an IJ in a bond hearing can be appealed, thus subjecting the outcome of the hearing

to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding that the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). Thus, the second *Matthews* factor weighs heavily in favor of granting Petitioner the procedural protections afforded under § 1226(a).

The third and final *Matthews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, these interests are in fact served by the individualized determination by an IJ, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing procedures. Indeed, limiting the use of detention to only noncitizens who are dangerous or pose a flight risk through existing bond procedures serves the government's interest while reducing the fiscal and administrative burdens associated with immigration detention. *Escobar Salgado*, 2025 WL 3205356, at *25 (citing *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)).

The Court thus finds that all three of the *Matthews* factors weigh heavily in favor of Petitioner, and his detention without the opportunity for release on bond violates his rights under the Due Process Clause of the Fifth Amendment.[1]

///

---

[1] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether Petitioner's detention violates the INA.

### C. Violation of Equal Protection

Petitioner next argues that his detention violates the Fifth Amendment's guarantee of equal protection because his detention was based solely on his nationality, religion, and race. (Pet. 11:18–23). Under § 1182(d)(5)(A), the Secretary of DHS may terminate a grant of humanitarian parole when the purposes of the grant of parole have been served. 8 U.S.C.A. § 1182(d)(5)(A). While Petitioner characterizes the termination of his parole as "arbitrary and capricious," he does not argue why the purposes of his original grant of parole had not been served. (*See* Pet. 11:3–27). Without showing that the purposes of his original parole had not been served, the Court cannot conclude that his detention is not on that basis, rather than on the basis of his nationality, religion, and race. Accordingly, the Court DENIES Petitioner's Third Cause of Action, but grants Petitioner leave to amend.

### D. Relief Requested

Petitioner asks this Court to order the Executive Office for Immigration Review to hold a bond hearing immediately. (Pet. 12:10–11). In his Reply, Petitioner further requests that the Court order his immediate release. (Reply 8:26–27). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." *Id.* "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C.A. § 2243).

Here, the specific harm faced by Petitioner is his detention without a bond hearing. The Court finds that harm is remedied by ordering a bond hearing within seven days. Given the due process rights at stake, if a bond hearing is not provided promptly within that timeframe, Petitioner shall be immediately released until he can be provided with a bond hearing.

///

///

IV. **CONCLUSION**

**IT IS HEREBY ORDRED** that Petitioner's Petition for Habeas Relief, (ECF No. 1), is **GRANTED, in part, and DENIED, in part.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to § 1226(a) within seven days from the date of this Order.

**IT IS FURTHER ORDERED** that if Respondents do not provide Petitioner a bond hearing within that timeframe, Petitioner must be immediately released until he can be provided with a bond hearing.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from denying Petitioner the ability to be released on bond on the basis that Petitioner is subject to mandatory detention under 8 U.S.C.A. § 1225(b)(2).

**IT IS FURTHER ORDERED** that Respondents must file a notice on the docket no later than February 17, 2026, to certify compliance with the Court's order.

**DATED** this __9__ day of February, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court